**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vanity Delgadillo, | No. CV-22-00106-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Vanity Delgadillo's application for a period of disability and disability insurance benefits by the Social Security Administration ("SSA"). (AR. 22.) Plaintiff filed a Complaint with this Court seeking judicial review of that denial. (Doc. 1.) The Court now addresses Plaintiff's Opening Brief (Doc. 17), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 19), and Plaintiff's Reply Brief (Doc. 20). The Court has reviewed the briefs and the Administrative Record (Doc. 14, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

**I.      BACKGROUND**

On July 20, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a disability beginning on November 1, 2017. (AR. 22.) The SSA initially denied the application on January 7, 2019, and upon reconsideration on May 14, 2019. (*Id.*) Plaintiff then requested a hearing before an ALJ to review the application denial in which she appeared and testified. (*Id.*) On April 14, 2021, the ALJ issued an unfavorable decision upon review of Plaintiff's application, finding that Plaintiff

was not disabled within the meaning of the Social Security Act ("Decision"). (AR. 19, 23.) On November 23, 2021, the Social Security Appeals Council found that Plaintiff's stated reasons for review did not provide a basis for changing the ALJ's decision denying disability. (AR. 1.) Plaintiff timely sought judicial review with this Court pursuant to 42 U.S.C. § 405(g). (Doc. 17 at 2.)

The Court has reviewed the medical evidence and administrative record and will discuss pertinent evidence in addressing the issues raised by the parties. Upon reviewing the medical evidence, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease; systemic Lupus erythematosus; Fibromyalgia; Lupus nephritis; asthma; osteoporosis; rheumatoid arthritis; neuropathy; and migraines. (AR. 25.) Even though the ALJ did not consider them to be severe, the ALJ also determined Plaintiff to have the following medically determinable impairments: anxiety; depression; gastroesophageal reflux disease without esophagitis; unspecified gastritis; allergic rhinitis due to pollen; acne keloid; irritable bowel syndrome; high cholesterol; insomnia; hypertension; hypercholesterolemia; hyperthyroidism; and vitamin D deficiency. (*Id.*) However, the ALJ found that these medically determinable impairments have not caused "more than a minimal" effect on Plaintiff's ability to perform work-related activities. (*Id.*)

The ALJ subsequently found that Plaintiff did not have any impairments or combination of impairments that meet or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR. 26.) The ALJ explicitly considered Listings 1.00 (Musculoskeletal System), 3.00 (Respiratory Disorders), 11.00 (Neurological System), 12.00 (Mental Disorders), and 14.00 (Immune System Disorders). (*Id.*)  After this, the ALJ determined Plaintiff's residual functional capacity ("RFC").[1]

The ALJ found that Plaintiff's impairments could reasonably be expected to cause some of her alleged symptoms, but the ALJ ultimately determined that Plaintiff has the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b) with certain limitations. (AR. 28.) Here, the ALJ determined that Plaintiff can (1) lift/carry 10 pounds frequently

---

[1] Residual functional capacity is the most a claimant can still do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

and 20 pounds occasionally; (2) sit for about six hours and stand/walk for about six hours during an eight hour work day; (3) occasionally climb ramps, stairs, ladders, ropes, and scaffolds; (4) occasionally balance, stoop, kneel, crouch, or crawl; and (5) work in an environment where she has no more than frequent exposure to fumes, odors, dust, gases, poor ventilation, and hazards. (*Id.*)

In determining Plaintiff's RFC, the ALJ first found that Plaintiff has performed daily activities that were not limited to "the extent one would expect given the complaints of disabling symptoms and limitations, including travel, caring for herself, caring for her children, and maintaining a daily schedule." (AR. 33.) The ALJ also points to a "fairly conservative" course of treatment and the fact that such treatment was generally effective. (AR. 33-34.) Third, the ALJ determined that the record did not contain persuasive opinions from treating or examining physicians to support a more limited RFC than the one articulated by the ALJ. (AR. 34.) Lastly, the ALJ found Plaintiff's symptom testimony to be inconsistent with objective findings in the record. (AR. 34.)

From these conclusions, the ALJ, relying on testimony from a Vocational Expert ("VE"), determined that Plaintiff could perform her past relevant work and, alternatively, other representative occupations with significant representative jobs available in the national economy. (AR. 34-35.) As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). (AR. 36.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a

"specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id*.

**III. ANALYSIS**

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC by rejecting certain medical opinion evidence and Plaintiff's symptom testimony. (Doc. 17 at 25.) As a result, she argues that the ALJ was overinclusive in the representative jobs Plaintiff could perform in the national economy at step five. (*Id.*) These issues are addressed in turn.

**A.  Medical Opinion Evidence**

Plaintiff argues that the ALJ erred by rejecting the assessments from treating

- 4 -

providers, Amanda R. Modesta-Keyhani, M.D., Yeeshu Arora, M.D., and Sabrina Ramirez, NP-C ("Plaintiff's Providers"). (Doc. 17 at 3.) Specifically, Plaintiff asserts that the ALJ did not have specific and legitimate reasons supported by substantial evidence for rejecting her provider's opinions and failed to consider the required "supportability" or "consistency factors." (AR. 3-4.) In response, the Commissioner maintains that substantial evidence supports the ALJ's finding that Plaintiff's Providers' medical opinions are unpersuasive. (Doc. 19 at 17.)

In 2017, the SSA amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). For claims filed on or after March 27, 2017, the revised rules apply. *Id*. Here, Plaintiff's claim was filed on July 20, 2018, so the revised rules apply. (AR. at 22.) The Ninth Circuit recently addressed the effect of the new regulations, so the Court begins by addressing this issue. *See Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022).

Under the old regulations, "[t]he law in the Ninth Circuit [was] that, although the ALJ must consider all medical opinion evidence, there is a hierarchy among the sources of medical opinions. Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians." *Latahotchee v. Comm'r of Soc. Sec. Admin.*, No. CV-19-05668-PHX-DWL, 2021 WL 267909, *4 (D. Ariz. Jan. 27, 2021) (citation omitted). Based on this hierarchy, the Ninth Circuit consistently ruled that an ALJ may only reject an examining physician's opinion by providing "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

Under the revised rules, all evidence an ALJ receives is considered, but the rules create specific articulation requirements regarding how medical opinions and prior administrative medical findings are considered. 20 C.F.R. § 404.1520c(a)–(b). The 2017 regulations provide that "[ALJs] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion." *Id*. § 404.1520c(a). Instead, the ALJ

determines the persuasiveness of the medical opinion findings based on factors outlined in the regulations. *Id.* §§ 404.1520c(a)–(b). The most important factors an ALJ must "consider when [evaluating] the persuasiveness of medical opinions . . . are supportability . . . and consistency." *Id.* § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to [ ] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of [the] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(b)(2), (c).

In *Woods*, the Ninth Circuit held that these revised regulations clearly intended to abrogate its precedent requiring ALJs to provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion. *See* 32 F.4th at 792. Nevertheless, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* This means that an ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)) (internal citation omitted) (alteration in original). Supportability is defined as how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings." 20 C.F.R. § 404.1520c(c)(1). Consistency means "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)).

Plaintiff's Providers all had similar opinions as to Plaintiff's ability to engage in work-related activities. On September 16, 2020, Dr. Modesta-Keyhani indicated that Plaintiff had impairments that prevent her from working an eight-hour workday. (AR. 1590.) Dr. Modesta-Keyhani also indicated that in an eight-hour workday Plaintiff could sit for less than two hours, lift no more than 10-15 pounds, stand/walk for less than one

hour, and carry no more than 10-15 pounds. (*Id.*) Further, Dr. Modesta-Keyhani concluded that Plaintiff must alternate positions between sitting, standing, or walking every 46-60 minutes. (*Id.*) From all this, Dr. Modesta-Keyhani estimated that Plaintiff would miss between two and three workdays per month due to her medical impairments. (AR. 1591.)

On October 20, 2020, Dr. Arora assessed Plaintiff and made similar findings. Dr. Arora also indicated that Plaintiff suffered from medical impairments precluding her from participating in an eight-hour workday. (AR. 2124.) Here, Dr. Arora checked boxes representing that Plaintiff suffers from three to six headaches per month and that this impairment caused a "moderate" limitation on concentration. (*Id.*) Dr. Arora predicted that Plaintiff would miss five or more workdays per month due to her medical impairments. (AR. 2125.)

NP Ramirez also assessed Plaintiff in September 2020. (AR. 1670.) Her assessment of Plaintiff was the most limiting. She found that the following impairments affected Plaintiff's ability to perform work-related activities: (1) Systemic Lupus Erythematosus; (2) Rheumatoid Polyneuropathy with rheumatoid arthritis of multiple sites; (3) spondylosis; and (4) Fibromyalgia. (*Id.*) NP Ramirez also indicated that in an eight-hour workday, Plaintiff could sit no more than two hours, lift no more than 10 pounds, stand no more than 2 hours, and carry less than 10 pounds. (*Id.*) NP Ramirez also indicated that Plaintiff needed to alternate between sitting, standing, and walking every 46-60 minutes, that Plaintiff's medical impairments would cause her cognitive or pace limitations, and that she would miss six or more workdays per month due to such impairments. (AR. 1670-71.)

Although the medical opinions of Plaintiff's Providers are generally consistent with each other, the ALJ found all three of them to be "less persuasive" because they were unsupported and inconsistent with the overall record. (AR. 32.) As stated, the ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *See Woods*, 32 F.4th at 792. This means the ALJ must articulate how persuasive it finds all the medical opinions and

explain how it considers "supportability" and "consistency" factors. *Id.*

In considering "supportability," the ALJ found:

> [T]he record documents generally mild objective findings and the general effectiveness of treatment in managing the claimant's symptoms with the claimant repeatedly endorsing the ability to perform daily activities. Further, these opinions contain very little explanation or support.

(AR. 32.) As Defendant points out, Plaintiff's Providers simply circled or checked boxes related to Plaintiff's limitations in the workplace without providing sufficient explanation. Although a medical opinion generally cannot be rejected solely because it is a check-box form, it can be rejected if opinions are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014); *see also, Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (finding ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions) (citations omitted). All three of Plaintiff's Providers submitted standard, two-page, check-box form assessments. (AR 1590-91, 1670-71, 2124-25.) Further, as the ALJ points out, they contain little to no explanation as to *why* they made such restrictive findings. (AR. 32.)

Additionally, the ALJ found Dr. Modesta-Keyhani's assessment of Plaintiff to be unsupported because it relied on a telemedicine visit, rather than an in-person physical examination. (AR. 31.) The ALJ also found it likely that Plaintiff "self-reported" her limitations to Dr. Modesta-Keyhani. (AR. 31-32.) If a treating provider's opinions are based "to a large extent" on applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating providers opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). The ALJ's determination that Dr. Modesta-Keyhani's assessment was largely based on self-reporting is an appropriate reason to discount her opinion.

The ALJ also adequately discussed and considered "consistency" in evaluating the persuasiveness of Plaintiff's Providers' medical opinions. Even though these medical

opinions are consistent with each other, the ALJ found that they are not consistent with the medical opinions of State Agency Medical Consultants Dr. VuDo, M.D., and Dr. Amado, M.D. ("State Consultants"). In January 2019, Dr. VuDo assessed Plaintiff and found she can perform work-related activities at a "light" exertional level. (AR. 32.) Dr. VuDo found that Plaintiff did have exertional limitations but, in contrast to Plaintiff's Providers, found that Plaintiff cand stand and/or walk for about six hours in an eight-hour workday. (AR. 459.) He further assessed that Plaintiff can sit for six hours in an eight-hour workday. (*Id.*) Dr. VuDo also found that Plaintiff can occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel and crouch. (*Id.*)

Upon reconsideration in May 2019, Dr. Amado largely affirmed Dr. VuDo's assessment of Plaintiff's RFC. (AR. 473-74.) In assessing consistency, the ALJ stated that "[State Consultant's] opinions are [] generally consistent with the overall record and with Dr. Amado's slightly more restrictive opinion appropriately accommodating [Plaintiff's] subjective complaints of pain." (AR. 32-33.) She also explains that, unlike Plaintiff's Providers, the State Consultants provided sufficient support for their opinion, including an explanation and citation to the record. (AR. 32.) Therefore, she found the State Consultants' medical opinion's more persuasive in making her RFC determination.

The ALJ also considered other objective medical evidence to establish that Plaintiff's Providers' opinions were not consistent with the record, including Plaintiff's daily activities and the effectiveness of her treatment. For example, the ALJ found that Plaintiff's business travel, ability to care for herself and her children, and maintenance of a daily schedule demonstrate inconsistency between Plaintiff's Providers' assessments and the objective medical record. (AR. 33.) The ALJ concluded that "[Plaintiff] has described daily activities which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." (*Id.*) This finding constitutes "substantial evidence" to reject Plaintiff's Providers' opinions and satisfies the ALJ's duty to consider "supportability" and "consistency" in evaluating the persuasiveness of those opinions. *See Williams v. Comm'r of Soc. Sec. Admin.*, No. CV-15-02629-PHX-GMS, 2017 WL

1191091 at *3 (D. Ariz. Mar. 31, 2017) (finding the ALJ did not err in discrediting a doctor's testimony due to its inconsistencies with Plaintiff's daily activities). Accordingly, the ALJ's finding that the Plaintiff's Providers' medical opinions were unpersuasive is supported by substantial evidence and free from legal error.

### B. Symptom Testimony

Plaintiff argues that the ALJ committed materially harmful error by rejecting Plaintiff's symptom testimony. An ALJ employs a two-step process in evaluating a claimant's symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the . . . symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). Then, provided there is no evidence of malingering, the ALJ must evaluate the claimant's statements in context of the objective medical evidence and other evidence in the record. *See* 20 C.F.R. § 404.1529(c)(2)-(3). At this step, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (internal quotation marks omitted). This requirement prevents an ALJ from "arbitrarily discredit[ing]" the claimant's subjective symptom testimony. *Thomas*, 278 F.3d at 958.

Despite the "clear and convincing standard [being] the most demanding required in Social Security cases," *Garrison*, 759 F.3d at 1015 (internal quotation marks and citation omitted), the ALJ need not "believe every allegation of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Instead, when assessing the claimant's credibility, the ALJ may consider "inconsistencies either in claimant's testimony or between his testimony and his conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains." *Thomas*, 278 F.3d a 958-59 (internal quotation marks and citation omitted). Should a district court find that the ALJ's specific, clear, and convincing reasons are supported by substantial evidence, the court must not second guess the ALJ's

judgment and should affirm the ALJ's decision. *See Fair*, 885 F.2d at 604.

At step one, the ALJ states, "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (AR. 28.) There is no evidence to indicate malingering. (*Id.*) Thus, the Court turns to whether the ALJ's rejection of the Plaintiff's symptom testimony was based on specific, clear and convincing reasons supported by substantial evidence.

Plaintiff argues that her symptoms make it impossible to perform any sustained work, rendering her "disabled" within the meaning of the Act. (Doc. 17 at 21.) To establish this, she relies on both on her physical and mental impairments, including surgical complications in her hands, pain in her back, extensive migraine headaches, pain from lupus, anxiety, and depression. (AR. 28, 395.)

In discounting Plaintiff's symptom testimony, the ALJ stated that the "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this Decision." (AR. 28.) As an example, the ALJ relied on Plaintiff's documented course of treatment, including medications and injections for symptoms associated with her head pain, low back pain, joint pain, hand pain, flares, morning stiffness, weakness, muscle tension, positive trigger points, nausea, difficulty sleeping, dry eyes, and fatigue. (AR. 28-29.) The ALJ cited to specific instances between 2017 and 2020 where Plaintiff reports her symptoms have improved with treatment and that she was "doing well." (AR. 29.) The ALJ found this to be inconsistent with Plaintiff's symptom testimony, namely that her head pain, back pain, musculoskeletal symptoms, and pain from lupus prevent her from working. (*Id.*)

Although Plaintiff argues that her "brief" periods of reprieve following treatment do not support a finding that her pain is controlled (Doc. 17 at 23), the Court finds that the ALJ's reliance on Plaintiff's documented improvement is supported by substantial evidence. *Garrison*, 759 F.3d at 1014-15. The Court declines Plaintiff's request to second

guess the ALJ's reasonable interpretation of the evidence, even if such interpretation could give rise to inferences more favorable to Plaintiff. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

As another example, the ALJ relied on imaging results to support her finding that Plaintiff's symptom testimony was inconsistent with the objective medical record. The ALJ indicated that Plaintiff's x-ray imaging did not reveal any significant findings of Plaintiff's spine, left shoulder, and hips, and a March 2020 MRI of Plaintiff's lumbar spine only revealed "mild findings." (AR. 30.) The ALJ also found Plaintiff's musculoskeletal examinations to be within normal limits, including motor strength, sensation, reflexes, and gait, Plaintiff's functioning to be "normal despite her symptoms[,] and that she's been able to carry out daily activities normally in 2018 and 2019." (*Id.*)

Lastly, the ALJ considered Plaintiff's mental functioning in rejecting her symptom testimony. Despite finding that Plaintiff had medically determinable impairments of anxiety and depression, the ALJ found that these impairments do not cause more than a minimal limitation on her ability to perform basic mental work activities. (AR. 25.) The ALJ supported her conclusion by pointing to specific instances in the record where Plaintiff denied depression and reported that her anxiety was stable. (AR. 31.) The ALJ also pointed to evidence in the record establishing that Plaintiff reduced her medication intake because her mental health symptoms had improved. (*Id.*)

Thus, the Court finds that the ALJ relied on a specific, clear, and convincing reasons supported by substantial evidence in rejecting Plaintiff's symptom testimony. *See Singh v. Comm'r of Soc. Sec. Admin.*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620 at *3 (D. Ariz. Sept. 28, 2020) (affirming ALJ's determination that daily activities were inconsistent with symptom testimony); *Porter v. Acting Comm'r of Soc. Sec. Admin.*, No. CV-21-0193-TUC-JCH (LCK), 2022 WL 7346430 at *4 (D. Ariz. Aug. 9, 2022) (finding success of treatment relevant to evaluating symptom testimony).

///

///

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** affirming the April 14, 2021 decision of the Administrative Law Judge (AR. 22), as upheld by the Appeals Council on November 23, 2021 (AR. 1).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment consistent with this Order and close this case.

Dated this 17th day of November, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge